IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:05CR73 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| RIGOBERTO VALLE CRUZ and ) | |
| ANGELINA A. ALFORD, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the objection of the United States of America ("the government"), Filing No. 32, to the report and recommendation ("R&R") of the United States Magistrate Judge ("magistrate"), Filing No. 30. The magistrate recommended that this court grant in part, and deny in part, defendant Valle Cruz's motion to suppress, Filing No. 23, and grant defendant Alford's motion to suppress, Filing No. 20, in its entirety. Filing No. 30, R&R.

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the report or recommendations to which the parties object. Accordingly, the court has reviewed the record, exhibits and briefs, including the transcript of the hearing on the motion and a videotaped recording of the traffic stop at issue. The court concludes that the defendant's objections should be overruled and that the report and recommendation of the magistrate should be adopted.

The defendants were charged with possession with intent to distribute more than 500 grams of cocaine in violation of 18 U.S.C. § 841 (a)(1) & (b)(1). They were arrested as the result of the searches of two vehicles following the concededly legitimate traffic stop of one of the vehicles. Defendant Valle Cruz moves to suppress the evidence found in

both the Ford SUV and in the Daewoo.  Filing No. 23.  Defendant Alford moves to suppress the evidence found in the Daewoo and also moves to suppress statements she later made to police.  Filing No. 20.

A hearing on the motions was held on May 17, 2005.  *See* Filing No. 31, Transcript of Hearing on Defendants' Motions to Suppress and Motion to Sever ("Hrg. Tr.").  A videotaped recording of the traffic stop was offered and admitted into evidence at the hearing.  Filing No. 29, Exhibit List, Hearing Exhibit ("Hrg. Ex.") 1.  The court has reviewed the transcript of the hearing and the videotaped recording of the traffic stop and generally agrees with the magistrate's factual findings.

The evidence shows that defendant Valle Cruz was driving a Ford sport utility vehicle ("SUV") and was pulled over for speeding.  His girlfriend, Ms. Alford, was following in a Daewoo.  Ms. Alford pulled her vehicle to the side of the road after defendant Valle Cruz was stopped.  The videotaped recording shows that Ms. Alford was almost immediately told by the officer to "stay here, don't go anywhere," and to "sit tight."

Nebraska State Highway Patrol Trooper Chad Phavy testified that he stopped the Ford SUV for speeding.  Hrg. Tr. at 8.  Officer Phavy testified that as he was approaching the Ford SUV, a white Daewoo pulled off the highway and stopped on the shoulder of the road in front of the SUV.  *Id.* at 13.  The driver of the SUV identified himself as Abraham Orona Saez and furnished a California driver's license in that name.  *Id.* at 14.  The driver stated that he had been in New York to deliver the white Daewoo to a man named Herman, but that he was unable to find the man and was returning to California.  *Id.* at 17.  The driver first stated that he had been in New York for three to five days and later said he had been there for a week.

2

Trooper Phavy also approached the white Daewoo but did not ask the driver for a license or vehicle registration because he had no reason to do so. *Id.* at 18. The driver of the Daewoo stated she and the other driver had gone to New York to visit some friends and that she had slept the whole time. Trooper Phavy also testified that the driver had watery, bloodshot eyes and appeared to be "coming down" off drugs. Trooper Phavy later asked to see Ms. Alford's driver's license, and asked for permission to "run it through the computer." Alford consented. She was told several times to "sit tight."

Trooper Phavy issued a warning ticket to the driver of the SUV, told him he was free to leave, and then asked for consent to search the SUV. Phavy testified that the driver consented and Trooper Phavy summoned a drug dog. The dog alerted to the center console of the car. A small quantity of cocaine that was packaged for personal use was found in the console. *Id.* at 89. A device used to consume a controlled substance was also found in the vehicle. *Id.* Trooper Phavy then placed defendant Valle Cruz under arrest. *Id.* at 60.

He then approached the white Daewoo and asked the driver if she would mind if the canine did "a walk around" on the car. Ms. Alford objected, stating that she "didn't do anything wrong." *Id.* at 36-37. The encounter turned into what Trooper Phavy characterized as a "bickering contest." *Id.* at 64. The videotaped recording shows that Ms. Alford refused consent and in fact vehemently objected to the search. The videotape also shows conduct bordering on abusive by Trooper Phavy. He threatened Alford with arrest for obstruction of justice and ultimately reached into Alford's car and unlocked it. The videotape shows that the two drivers were detained for over two hours before the search

3

of the Daewoo took place. The videotape also reveals that the officers involved were told that Ms. Alford was pregnant and that she was hungry.

Trooper Phavy testified that he believed he had probable cause to search the white vehicle after he found the small quantity of drugs in Valle Cruz's vehicle, based on the defendants' inconsistent stories and on defendant Alford's demeanor. He regarded it as suspicious that defendant Valle Cruz asked if Alford could leave because she was hungry. The evidence shows that Trooper Phavy did not learn of Ms. Afford's criminal history, which included a drug-related conviction, until after her arrest. Phavy called the county attorney several times to ascertain whether there was probable cause to search the Daewoo. Trooper Phavy told Ms. Alford she would be arrested if she did not allow the search. The evidence shows that both defendants were listed as owners of the Daewoo on its vehicle registration, although defendant Valle Cruz was listed under the assumed name, Orono Saez.

At the conclusion of the hearing, the magistrate stated his findings on the record. *Id.* The magistrate found that defendant Valle Cruz had standing to challenge the search of the Daewoo because the Daewoo was registered to him and was in close proximity at the time of the search. *Id.* at 112. He further found that Valle Cruz's consent to the search of the Ford SUV was voluntary. *Id.* at 108. The magistrate found, however, that the search of the Daewoo was not supported by probable cause. *Id.* at 109-10. The magistrate explained that:

> "[s]imply because there was some relationship between the driver of the Daewoo and the driver of the SUV, simply because they found some—the officers found a personal use quantity of—of drugs in the SUV and the discrepancy in the itinerary is so minute and there is an obligation on the part of the officers to try to resolve some of that discrepancies if there is—there

4

> is none attempted in this case, but the discrepancies were so minor as to give only another straw to a reasonable suspicion but it does not provide another straw for the purposes of whether or not there was probable cause."

*Id.* at 109.  Importantly, the magistrate noted that there would have been probable cause to conduct the search if the drug dog had alerted on the Daewoo, but absent such an alert, the officers' suspicions, although sufficient to provide reasonable suspicion for a continued detention in order to conduct a dog-sniff, "did not rise to the extent of probable cause in order to search the vehicle." *Id.*  Because the magistrate determined that the search of the Daewoo was illegal, he found that Ms. Alford's subsequent statements should also be suppressed as "fruit of the poisonous tree" under *Wong Sun v. United States*, 371 U.S. 471 (1963).

## DISCUSSION

The first clause of the Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated. . . ."  U.S. Const. amend. IV.  Thus, the Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures,'" *United States v. Jacobsen*, 466 U.S. 109, 121 (1984), and requires that both be reasonable.  *City of Indianapolis v. Edmond*, 531 U.S. 32, 36 (2000).  A "search" occurs when an expectation of privacy that society is prepared to consider reasonable is infringed.  *Id.*  A "seizure" of property occurs when there is some meaningful interference with an individual's possessory interests in that property.  *Id.*

A search or seizure is ordinarily unreasonable in the absence of individualized suspicion of wrongdoing.  *Edmond*, 531 U.S. at 36.  The requirement of individualized suspicion is relaxed only in limited circumstances that involve important governmental

interests or immediate hazards. *See, e.g., United States v. Martinez-Fuerte*, 428 U.S. 543, 562 (approving brief, suspicionless seizures of motorists at a fixed Border Patrol checkpoint designed to intercept illegal aliens); *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 455 (1990) (approving a sobriety checkpoint aimed at removing drunk drivers from the road); *Delaware v. Prouse*, 440 U.S. 648, 663 (1979) (suggesting that a roadblock with the purpose of verifying drivers' licenses and vehicle registrations would be permissible). The government's "general interest in crime control" and its desire to "detect evidence of ordinary criminal wrongdoing" will not, however, justify a regime of suspicionless stops. *Edmond,* 531 U.S. at 41-42 (refusing to recognize an exception to the general rule of individualized suspicion for government pursuit of general crime control, including narcotics-interdiction). A dog sniff performed <u>during</u> a traffic stop does not violate the Fourth Amendment—although a lawful seizure "can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." There is no Fourth Amendment violation when the duration of the stop is not extended by the dog sniff. *Illinois v. Caballes*, 543 U.S. ----, 125 S. Ct. 834, 836-38 (2005) (stating that "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog sniff itself infringed respondent's constitutionally protected interest in privacy").

Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure" of "persons" within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809 (1996). Nonetheless, certain limited intrusions on people or property can legitimately be supported by less than probable cause. *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry* governs

traffic stops. *United States v. Fuse*, 391 F.3d 924, 927 (8th Cir. 2005). Under *Terry*, a law enforcement officer may detain a person for investigation without probable cause to arrest if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United states v. Maltais*, 403 F.3d 550, 553 (8th Cir. 2005). Also, police can legitimately "ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage," but a seizure occurs when police "convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 434 (1991). The officer also may detain a motorist while the officer completes certain routine tasks, such as writing a citation and completing computerized checks of a driver's license, vehicle registration, and criminal history. *See Fuse,* 391 F.3d at 927.

The level of suspicion necessary to constitute "reasonable suspicion" sufficient to justify a limited detention "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "is obviously less demanding than that for probable cause." *United States v. Sokolow,* 490 U.S. 1, 7 (1989). "Probable cause means 'a fair probability that contraband or evidence of a crime will be found.'" *Id.* (*quoting Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The reasonable-suspicion standard is a derivation of the probable-cause command, applicable only to those brief detentions which fall short of being full-scale searches and seizures and which are necessitated by law enforcement exigencies such as the need to stop ongoing crimes, to prevent imminent crimes, and to protect law enforcement officers in highly charged situations." *Sokolow*, 490 U.S. at 7.

Fourth Amendment rights are personal rights that may not be asserted vicariously. *See Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978). An individual asserting Fourth

7

Amendment rights must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable. *United States v. Barragen*, 379 F.3d 524, 529 (8th Cir. 2004). Factors relevant to the determination of standing include: ownership, possession and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; the totality of the circumstances surrounding the search; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case. *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994). A person has no reasonable expectation of privacy in an automobile that belongs to another. *Rakas*, 439 U.S. at 148-49.

Although he was not driving the Daewoo, the evidence shows that defendant Valle Cruz was a registered owner of the vehicle. As applied to the evidence presented at the hearing, the court agrees with the magistrate's finding that defendant Valle Cruz has standing to challenge the search of the Daewoo. The evidence establishes that Valle Cruz has a possessory interest in the vehicle and a legitimate privacy interest, especially in view of the proximity to the vehicle at the time of the search. It is not disputed that Valle Cruz owns the vehicle. Also, it was established that the couple were traveling together.

Moreover, the court agrees that although the law enforcement officers may have had a "reasonable, articulable suspicion" to justify a brief or limited detention such as a dog-sniff, they did not have probable cause to search the vehicle. The law enforcement officers' purported justifications are unavailing. The respective defendants' vaguely differing accounts of their travel plans cannot even be characterized as inconsistent. Finding a user quantity of an illegal substance in a vehicle is not evidence from which it can

be inferred that there is a fair probability that contraband will be found in another vehicle. Similarly, defendant Alford's demeanor, although arguably consistent with drug use, is also consistent with tiredness, eyestrain, travel fatigue, and anger or irritability. Such demeanor, without more, will not furnish probable cause to support a search. The detention was neither brief nor limited. Significantly, Trooper Phavy testified that he had no reason to stop or detain Ms. Alford at the outset. The dog-sniff did not result in an alert. Ms. Alford had done nothing wrong. She was never given any indication that she was free to leave and was, in fact, threatened with prosecution, arrest and jail and almost assaulted for refusing to consent to a search.

The court finds that the magistrate's R&R should be adopted. The search of the white Daewoo was not supported by probable cause and amounts to an unreasonable search and seizure in violation of the Fourth Amendment. The defendants' motions to suppress the evidence found in the Daewoo and statements made subsequent to the seizure should be granted. Accordingly,

IT IS ORDERED:

1. The government's objection, Filing No. 32, to the magistrate's report and recommendation, Filing No. 30, is overruled;

2. The report and recommendation of the magistrate, Filing No. 30, is adopted;

3. Defendant Valle Cruz's motion to sever, Filing No. 21, is denied;

4. Defendant Valle Cruz's motion to suppress, Filing No. 23, is denied with respect to evidence found in the Ford SUV and granted with respect to evidence found in the Daewoo; and

5.    Defendant Alford's motion to suppress evidence and statements, Filing No. 20, is granted.

DATED this 18th day of July, 2005.

> BY THE COURT:
>
> s/ Joseph F. Bataillon
> UNITED STATES DISTRICT JUDGE